IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

FERISSA TALLEY,               )
                              )
            Plaintiff,        )
                              )
vs.                           )        Case No. 19-00493-CV-W-ODS
                              )
U.S. DEPARTMENT OF LABOR,     )
                              )
            Defendant.        )

<u>ORDER AND OPINION (1) DENYING PLAINTIFF'S MOTIONS FOR
JUDGMENT ON THE PLEADINGS, (2) GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT, (3) FINDING AS MOOT DEFENDANT'S MOTION
TO STRIKE JURY DEMAND AND PLAINTIFF'S MOTION FOR LEAVE TO FILE
NOTICE OF APPEAL, AND (4) STRIKING PLAINTIFF'S NOTICE OF APPEAL</u>

Pending are Plaintiff Ferissa Talley's Motions for Judgment on the Pleadings
(Docs. #67, 69), Defendant United States Department of Labor's Motion to Strike Jury
Demand and Motion for Summary Judgment (Docs. #72, 75), and Plaintiff's Motion for
Leave to File Notice of Appeal (Doc. #94). For the following reasons, the Court denies
Talley's Motions for Judgment on the Pleadings, grants Defendant's Motion for
Summary Judgment, and finds as moot Defendant's Motion to Strike Jury Demand and
Plaintiff's Motion for Leave to File Notice of Appeal. In addition, the Court strikes
Plaintiff's Notice of Appeal.

## I.       BACKGROUND

### A.       Talley's FOIA Request

In January 2019, Plaintiff Ferissa Talley submitted a Freedom of Information Act
("FOIA") request to Defendant United States Department of Labor. Doc. #75-1, at 2, 8-
9.[1] Her FOIA request referred to "emails sent by Darin Powers at about 5:39 p.m. on
July 30, 2013 and the emails sent by Robert Huber at about 8:20 a.m. [on] July 31,
2013, with the subject 'WPS – next steps & actions' (respectively, '**Powers' emails**' and

_____

[1] Page references are taken directly from the pagination ECF applies to filings, not the
parties' pagination.

'**Hubers's emails**') that were included in the records of ALJ Case No. 2015-LDA-00030." Doc. #75-1, at 8 (emphasis in original).[2] Talley requested "an electronic (PDF) copy of any record maintained by the BRB[3] that satisfies the following criteria":

1. a copy of Powers' emails in any form that was transmitted to the BRB by any person at any time after January 2, 2018 along with any documentation establishing the date of transmission to and receipt by the BRB (e.g., a letter of transmittal or entry in any computer system);

2. a copy of Huber's emails in any form that was transmitted to the BRB by any person at any time after January 2, 2018 along with any documentation establishing the date of transmission to and receipt by the BRB (e.g., a letter of transmittal or entry in any computer system).

Doc. #1, ¶ 3; Doc. #68, ¶ 3; Doc. #75-1, at 2, 4, 8-9; Doc. #81, at 6.[4]

On February 4, 2019, Defendant responded via email to Talley's FOIA request. Doc. #1, ¶¶ 4, 25; Doc. #1-1; Doc. #68, ¶¶ 4, 25; Doc. #75, at 2; Doc. #75-1, at 2-6, 10-11; Doc. #81, at 6.[5] Defendant provided a copy of the Huber email but informed Talley's counsel, Jack Jordan, that the Powers email was being withheld under FOIA Exemption 4:

As I am sure you are aware, on 04 August 2017, the United States District Court for the District of Columbia granted summary judgment in favor of the DOL with respect to the Powers email – the first email in the DynCorp email chain. The Court held that "[t]he DOL properly withheld the unredacted version of the Powers email under FOIA Exemption 4 based on its attorney-client privileged nature. *Jordan v. U.S. Dep't of Labor*, 273 F.Supp. 3d 214, 227 (D.D.C. 2017), *reconsideration denied*, 308 F.Supp. 3d 24 (D.D.C. 2018), *aff'd sub nom. Jordan v. United States Dep't of Labor*, No. 18-5128, 2018 WL 5819393 (D.C. Cir. Oct 19, 2018)[.]

On 19 October 2018, in reviewing the decision of the District Court, [t]he United States Court of Appeals for the District of Columbia Circuit held that "[t]he district court did not err in concluding that the Powers email is exempt from disclosure pursuant to 5 U.S.C. 552(b)(4)." *Jordan v. United States Dep't of Labor*, No. 18-5128, 2018 WL 5819393, at *1 (D.C. Cir. Oct. 19. 2018).

---

[2] "ALJ Case No. 2015-LDA-00030" is discussed *infra*, section I(B)(1).
[3] "BRB" is the Benefits Review Board, which is part of Defendant's Adjudicatory Boards. Doc. #1, ¶ 16; Doc. #75-1, at 1.
[4] The Huber and Powers emails are discussed *infra*, section I(B).
[5] The email to Jack Jordan also responded to FOIA requests filed by other individuals he represented: B. Donaldson, J. Campo, L. Magdangal, and C. Purchase. Doc. #75-1, at 10-11, 15-16.

Doc. #75, at 2; Doc. #75-1, at 3, 10-11; Doc. #81, at 6.  On February 6, 2019, Talley appealed Defendant's FOIA response.  Doc. #75-1, at 3, 12-14; Doc. #81, at 6.

On March 5, 2019, Defendant sent an email to Talley's counsel, Jack Jordan, providing supplemental information in response to Talley's request for "documentation establishing the date of transmission to and receipt by the BRB."  Doc. #75-1, at 3-4, 15-16.[6]  Defendant informed Talley's counsel that "the BRB has no documentation that specifically addresses the receipt of the Powers or Huber-emails."  *Id.*  "[H]owever, in an effort to be as responsive as possible," Defendant provided "the Docket Sheet and UPS shipping label that documents the receipt…."  *Id.* at 15-21.  Defendant asked Jack Jordan to "forward this documentation as a supplementary response to the FOIA requests from your clients," including Talley.  *Id.*  On March 6, 2019, Talley's counsel acknowledged receipt of the email and supplemental records.  Doc. #75-1, at 4, 15.

### B.    The Powers and Huber Emails

Before addressing this lawsuit or considering the pending motions, the Court must provide background information about the Huber and Powers emails and briefly discuss the administrative and judicial proceedings that have addressed these emails.

### (1)    Maria Jordan's DBA Claim

In September 2012, Maria Jordan was injured while employed by DynCorp International, Inc. ("DynCorp") at the United States Consulate in Erbil, Iraq.  Doc. #75, at 4; Doc. #81, at 7.  Maria Jordan, represented by her husband, Jack Jordan (who is also Talley's counsel), filed a claim under the Defense Base Act ("DBA"), which provides coverage for injuries sustained by certain employees working on military bases and embassies outside the United States.  Doc. #75, at 3-4; Doc. #75-1, at 17-18; Doc. #81, at 6-7.  Maria Jordan's DBA claim is the "ALJ Case No. 2015-LDA-00030" referenced in Talley's FOIA request.

---

[6] Talley purports to deny Defendant's Facts 9 and 10.  Doc. #81, at 6-7.  However, Talley does not controvert these facts or the exhibits supporting the facts.  *Id.*  Thus, Talley is deemed to have admitted these facts.  L.R. 56.1(b)(1); Fed. R. Civ. P. 56(e).

During discovery in the administrative proceeding, a dispute arose regarding the discoverability of the Powers email.  Doc. #75, at 4; Doc. #81, at 7.  DynCorp resisted production of the Powers email, arguing it was protected by the attorney-client privilege.  *Id.*  In October 2015, DynCorp submitted the Powers email to the administrative law judge ("ALJ") for an in camera inspection.  Doc. #75, at 4; Doc. #81, at 8.  In February 2016, the ALJ issued an order finding the emails were privileged.

> [DynCorp]'s management-level employees expressly sought legal advice from [DynCorp]'s in-house counsel, and the statements themselves were confidential between the employees and the attorney at the time they were made.  These emails were received by the in-house counsel and a select group of upper-level employees, and there has been no evidence submitted to this Court that these communications were not kept confidential.

Doc. #75, at 4; Doc. #75-2, at 35 (internal citations omitted); Doc. #81, at 7.  Maria Jordan unsuccessfully appealed the ALJ's and BRB's decisions, which culminated in her petition for certiorari with the Supreme Court being denied.  Doc. #75, at 5; Doc. #81, at 8; *Jordan v. Dir., Office of Workers' Comp. Programs, Dep't of Labor*, 138 S. Ct. 1609 (Mem.) (2018).

### (2)   Jack Jordan's District of Columbia Lawsuit

Beginning in June 2016, Jack Jordan,[7] Maria Jordan's husband and Talley's counsel, submitted FOIA requests to Defendant related to the Huber and Powers emails.  *Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d 214, 220-24 (D.D.C. 2017); Doc. #75, at 6; Doc. #81, at 8.  In September 2016, Jordan, proceeding pro se, filed a FOIA lawsuit against Defendant in the United States District Court for the District of Columbia ("D.C. District Court") seeking "to compel the Defendant to disclose the entirety of the first two emails in a continuous string of five emails that were dated July 30 or 31, 2013, with the subject line: 'WPS – next steps & actions,' which were sent by and to members of management of DynCorp International, Inc."  *Id.* at 219-20; *Jordan*, No. 16-CV-1868 (D.D.C. Sept. 19, 2016) (Doc. #1, ¶ 1); Doc. #75, at 6; Doc. #81, at 9.

---

[7] For the remainder of this Order, the Court refers to Jack Jordan as Jordan.

In August 2017, after conducting an in camera review of the DynCorp emails, the D.C. District Court determined Defendant "properly withheld the unredacted version of the Powers email under FOIA exemption 4 based on its attorney-client privilege nature." 273 F. Supp. 3d at 227.  The Honorable Rudolph Contreras stated the following:

> The DOL's justification – as set forth in the Smyth Declaration and *Vaughn* Index and confirmed by the Court's in camera *review* – is sufficiently detailed for the Court to conclude that FOIA Exemption 4 applies to the Powers email, because it contained privileged communications between an attorney and his client.  The DOL describes the DynCorp emails in a detailed manner – though obviously in such a way that does not disclose the information it seeks to protect – and there is nothing in the record to question the presumption of good faith that the Court affords the DOL in its explanation.  The DOL explains that the DynCorp emails concerned DynCorp's confidential information regarding a business contract and expressly sought DynCorp's attorney's input and review.  Smyth Decl. ¶ 31; *Vaughn* Index.  Additionally, the DOL reiterated that the DynCorp emails are "marked 'Subject to Attorney Client Privilege.'"  Smyth Decl. ¶ 31; *Vaughn* Index.  This description supports the inference that the DynCorp emails concern contractual information that DynCorp wishes to protect and that this contractual information was sent to in-house attorney Christopher Bellomy for his legal advice.

*Id.* at 232.[8]  "With respect to the Powers email, the [D.C. District] Court's in camera review confirms that the content of the information and the reason it was communicated

---

[8] Talley attempts to dispute the District Court "reviewed the Powers email in camera and determined it was 'privileged and thus exempt from disclosure.'"  Instead of citing to evidence in the record, Talley presents arguments.  Among other things, she argues "Judge Contreras knowingly violated Jordan's rights under federal law (most obviously FOIA and Rules 43 and 56 of the Federal Rules of Civil Procedure ("**FRCP**")) and asserted contentions that he *knew* were false (each a "**Lie**") to help DOL and DOJ employees conceal relevant evidence and material facts."  Doc. #81, at 9 (emphasis in original).  Talley's counsel, Jordan, includes these arguments in his declaration to refute Defendant's stated fact.  *Id.*  Simply including an argument in a declaration does not render the argument a fact.  Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.");  *see also Johnson Tr. of Operating Eng'rs Local #49 Health & Welfare Fund v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 523 (8th Cir. 2020) (stating "[c]onclusory assertions and citations to one's own arguments are insufficient to survive summary judgment.") (citation omitted).  Because Talley failed to dispute these facts by citing evidence in the record, they are deemed uncontroverted.  Fed. R. Civ. P. 56(e); L.R. 56.1(b)(1).

satisfy the demands of attorney-client privilege." *Id.* The D.C. District Court found additional briefing was required to ascertain whether the Huber email met the standard for attorney-client privilege. *Id.*[9] In May 2018, Defendant produced the unredacted Huber email to Jordan. Doc. #75-1, at 29-33.

Jordan appealed the D.C. District Court's decision to the United States Court of Appeals for the District of Columbia ("D.C. Court of Appeals"). In October 2018, the D.C. Court of Appeals affirmed the D.C. District Court's decision:

> The district court did not err in concluding that the Powers email is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(4). Nor did the district court abuse its discretion in reviewing the emails in camera to determine the extent of § 552(b)(4)'s applicability. *See ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 626 (D.C. Cir. 2011); 5 U.S.C. § 552(a)(4)(B). Notwithstanding appellant's speculation to the contrary, there is no reason to doubt the district court's finding that an in camera review revealed the Powers email contains an explicit request for legal advice. Nor is there any evidence of judicial bias, despite appellant's accusations to the contrary. To the extent appellant seeks disclosure of the parts of the Powers email that read "attorney-client privilege" and seek an explicit request for legal advice, the district court did not err in declining to require disclosure of such disjointed words that have "minimal or no information content. *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977).

*Jordan v. U.S. Dep't of Labor*, No. 18-5128, 2018 WL 5819393, *1 (D.C. Cir. Oct. 19, 2018). Jordan's ensuing Motion to Clarify Order, Motion Regarding Publication, and Petition for Reconsideration by the Panel or by the Full Court were denied in January

---

[9] In November 2017, Jordan submitted two FOIA requests to the United States Department of Justice, and in December 2017, he filed suit in the D.C. District Court related to those requests. *Jordan v. Dep't of Justice*, No. 17-CV-2702-RC (D.D.C.) (Doc. #1). During his second FOIA lawsuit, Jordan asked the D.C. District Court to release the Huber email and the non-confidential information in the Powers email. In denying Jordan's request, the D.C. District Court noted Jordan's motion "retread[ed] grounds already covered" in the first FOIA lawsuit, and the Court previously rejected Jordan's arguments. *Jordan*, No. 17-CV-2702-RC (D.D.C. Oct. 11, 2018) (Doc. #33). Jordan's subsequently filed motions – including his Motion for Reconsideration, Motion for Relief from Judgment, Motion for Release of Evidence, Motion to Reconsider, and Motion to Compel – were denied. *Id.* (Docs. #43-44, 50, 63-64). In April 2020, the D.C. District Court entered a Minute Order, denying another motion for reconsideration filed by Jordan and warning "any additional pleadings…concerning the Powers and Huber e-mails may be met with sanctions and/or a referral to the State bar of which Mr. Jordan is a member." *Id.* (Apr. 1, 2020).

2019.  No. 18-5128 (D.C. Cir. Jan. 24, 2019).  Jordan then sought reconsideration of the order denying his motions.  His motions were denied, and the Clerk was "directed to accept no further pleadings from appellant in this closed case."  No. 18-5128 (D.C. Cir. Apr. 15, 2019).

After the D.C. Court of Appeals affirmed the D.C. District Court's decision, Jordan asked the D.C. District Court to set aside its ruling, which was affirmed by the appellate court, and hold the Powers email was not protected by attorney-client privilege.  In July 2019, the D.C. District Court denied Jordan's motion, stating, among other things:

> This case is over.  Plaintiff may not file any further motions without first obtaining leave of court.  Leave will not be granted based on the same recycled arguments that Plaintiff has repeatedly raised and this Court has repeatedly found to be meritless.  Moreover, raising such arguments again may be cause for an award of fees.

331 F.R.D. 444, 54 (D.D.C. 2019).

Jordan again appealed and filed several motions with the D.C. Court of Appeals. *Jordan v. U.S. Dep't of Labor*, No. 19-5201 (D.C. Cir.).  In January 2020, the D.C. Court of Appeals denied Jordan's Motion to Require the District Court to Include Powers' Email in the Record, Motion for Ruling, and Motion for Summary Disposition.  No. 19-5201, 2020 WL 283003, at *1 (D.C. Cir. Jan. 16, 2020).  The D.C. Court of Appeals also affirmed the D.C. District Court's decision denying Jordan's motion to set aside.  *Id.* Jordan then filed his Motion to Reconsider and Reverse all Rulings, Motion to Recall Mandate, and Petition for Rehearing En Banc, which were all denied by the D.C. Court of Appeals.  No. 19-5201 (D.C. Cir. Feb. 18, 2020, and Mar. 18, 2020).  Again, the appellate court directed the Clerk "to accept no further submissions from appellant in this closed case."  *Id.* (D.C. Cir. Mar. 18, 2020).

### *(3)      Jordan's Sarbanes-Oxley Matters*

Jordan also filed an action against DynCorp under the Sarbanes-Oxley Act of 2002 ("SOX") in 2016.  *Jordan v. DynCorp Int'l LLC*, 2016-SOX-00042 (Dep't of Labor).  During this administrative proceeding, Jordan filed several motions asking ALJ Paul Almanza to find the Huber and Powers emails were not privileged, sanction respondents for making false statements about the emails, and direct Defendant to

7

produce the emails. In January 2018, ALJ Almanza sanctioned Jordan. *Jordan v. DynCorp Int'l LLC*, No. 2016-SOX-00042 (Dep't of Labor Jan. 15, 2018) (Order Sanctioning Complainant; Denying Complainant's Motions to Reconsider the Motion to Compel; to Declare the Emails Not Privileged; and for Declarations, Clarifications, and Production and Notice; and Ordering Complainant to Show Cause).

> The evidence overwhelmingly supports a finding that [Jordan] has again made statements without evidentiary support. A reasonable and competent attorney would know, and should know, that such statements were objectively without evidentiary support. The plain text of ALJ Merck's rulings speaks for itself. I have explained to Complainant, multiple times, the difference between stating that a ruling was incorrect and stating that the ruling was never made. E.g., May 15 Order at 51. Complainant's continued failure to grasp this simple concept is highly disconcerting.

> Moreover, Complainant appears to have engaged in sanctionable conduct for which he was already sanctioned. For him to have continued to engage in sanctionable conduct, even after being specifically sanctioned for doing so, suggests that the initial sanctions were insufficient.

*Id.* at 90-91. ALJ Almanza prohibited Jordan from filing additional motions for sanctions and directed Jordan to show cause why he should not be sanctioned. *Id.* at 92.

In February 2018, ALJ Almanza stated ALJ Merck, who presided over the DBA matter, issued rulings on "the privileged status of the Emails," and ALJ Almanza did "not have the authority to overturn, vacate, modify, or determine the veracity of another ALJ's ruling." *Jordan v. DynCorp Int'l*, No. 2016-SOX-00042 (Dep't of Labor Feb. 28, 2018) (Decision and Order of Dismissal and Order Sanctioning Complainant). ALJ Almanza also sanctioned Jordan for making statements about ALJ Merck and ALJ Almanza that were "without evidentiary support." *Id.* at 82-84.

In January 2019, Jordan appealed ALJ Merck's decision to Defendant's Administrative Review Board ("ARB"). In his Second Petition for Review, Jordan informed the ARB of the following:

> [Jordan] is already pursuing Powers' emails in FOIA suits in the D.C. Circuit, as well as in a second case in D.C. District Court and a third case in the Western District of Missouri (Eighth Circuit). In addition, in January 2019, six additional individuals (residing in areas under the Second, Sixth, Eighth, Ninth, and Tenth Circuits) each filed his or her own FOIA request for Powers' emails. Each request that is denied will be pursued in a separate suit.

8

Doc. #75, at 7-8; Doc. #75-3, at 27 n.5; Doc. #81, at 11.

In the meantime, Jordan filed another action against DynCorp and others[10] under the Sarbanes-Oxley Act of 2002 ("SOX"). *Jordan v. DynCorp Int'l LLC*, 2017-SOX-00055 (Dep't of Labor). In February 2018, ALJ William Barto dismissed Jordan's complaint. *Id.* (Feb. 18, 2018). In April 2018, ALJ Barto issued an order admonishing and sanctioning Jordan. *Id.* (Apr. 9, 2018). Jordan was "ADMONISHED against making legal contentions that are unwarranted by either existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law, in violation of 29 C.F.R. § 18.35(b)(2)." *Id.* at 9 (emphasis in original). In addition, Jordan was directed to "PAY to Respondent [DynCorp] the sum of $1,000.00, as reasonable attorneys' fees…." *Id.* at 10.

## C.    Jordan's FOIA Lawsuit in this Court

In August 2018, Jordan, proceeding pro se, filed a FOIA lawsuit in this Court. *Jordan v. Dep't of Labor*, No. 18-6129 (W.D. Mo.). Jordan's lawsuit pertained to two FOIA requests. FOIA Request F2018-850930 sought (1) letters from the OALJ to Jordan regarding his FOIA requests, (2) "[t]he letter from Chief ALJ Henley to [Jordan] dated May 15, 2017 regarding how to address ALJ misconduct through official channels," and (3) "[t]he letter from Chief ALJ Henley to [Jordan] dated February 2, 2018 refusing to meet with [Jordan] regarding ALJ misconduct." No. 18-6129 (Doc. #1, ¶ 2). FOIA Request F2018-858557 sought "emails sent by employees of DynCorp

---

[10] Jordan identified additional respondents: Littler Mendelson, P.C.; Ethan Balsam; Jason Branciforte; Edward T. Ellis; Vorys, Sater, Seymour, and Pease LLP; Pamela A. Bresnahan; Honorable Larry Merck; and the Honorable Paul Almanza. *Jordan v. DynCorp Int'l LLC*, No. 2017-SOX-00055, at 1 n.1 (Dep't of Labor Feb. 15, 2018). As explained by ALJ William Barto:

> [Jordan] originally sued DynCorp in the LDA case. He then sued DynCorp in the SOX case and added as respondents the two counsel who had represented DynCorp in the LDA case. In the instant case, Complainant again sues DynCorp and the counsel who represented DynCorp in the LDA case, but now adds as respondents the two counsel who defended DynCorp in the SOX case, the law firms that employ the attorney respondents, as well as the judges who presided over each case.

*Id.* at 2.

International LLC ("DI") on July 30 or 31, 2013 with the subject line: 'WPS – next steps & actions.'" *Id.* ¶ 4. These emails include the Huber and Powers emails. *Id.*

In December 2018, the Court granted Defendant's motion to dismiss Jordan's claims arising from FOIA Request F2018-858557. *Id.* (Doc. #24, at 4-6); *Jordan v. U.S. Dep't of Labor*, No. 18-6129, 2018 WL 6591807 (W.D. Mo. Dec. 14, 2018). The Court found Jordan's lawsuit was "parallel or duplicative of the matter litigated in the D.C. District Court." *Id.* (Doc. #24, at 5). Because "the conservation of judicial resources, comprehensive disposition of litigation, and the progress of that action weigh in favor of this Court deferring to the D.C. District Court," the Court deferred to the D.C. lawsuit and dismissed Jordan's claims related to FOIA Request F2018-858557. *Id.* at 5-6.

In February 2019, Jordan moved to add Ferissa Talley, who is the plaintiff in this matter, as a party to his lawsuit. *Id.* (Doc. #37). Although the Court had already dismissed Jordan's claims related to the Powers email, Jordan sought to add Talley because she requested the Powers email. Doc. #37-3. In support, Jordan argued:

> The DOL clearly is subject to substantial risk of incurring double obligations because of Ms. Talley's interest. If Ms. Talley must file suit separate, the DOL will be required to litigate all the issues that the DOL attempted to avoid with its Motion to Dismiss regarding Powers' emails. Such a result would be a waste of judicial and agency resources. Moreover, the arbitrariness of the DOL's efforts to conceal all text of Powers' emails is even more obvious now than it was previously….

Doc. #37, at 8. Jordan also maintained joining Talley as a party to his lawsuit "would ensure that judicial and administrative resources are not wasted by other courts re-addressing the issues that already have been addressed in this case." *Id.* at 17. Accompanying the motion was Talley's declaration wherein she stated she "retained Jack Jordan to join in the on-going litigation" in Jordan's lawsuit. *Jordan*, No. 18-6129 (Doc. #37-1, at 2). Jordan's declaration, also attached to the motion, stated he was representing Ferissa Talley, Mr. Campo, Mr. Magdangal, Mr. Purchase, and Mr. Donaldson with respect to their FOIA requests, which sought the Huber and Powers emails. *Id.* (Doc. #37-2, at 1-2).

In April 2019, this Court granted Defendant's summary judgment motion and found Jordan's motion to add Talley as a party was rendered moot. *Jordan*, No. 18-

6129 (Doc. #55).[11]  Jordan appealed to the United States Court of Appeals for the Eighth Circuit.  *Jordan*, No. 18-6129 (Docs. #57, 76, 79).  On February 21, 2020, the Eighth Circuit issued its decision, affirming this Court's decision to dismiss some claims as duplicative of another pending litigation and grant summary judgment on the remaining claims.  *Jordan v. U.S. Dep't of Labor*, 794 F. App'x 557 (8th Cir. 2020).  On May 5, 2020, the Eighth Circuit issued its mandate.

### D.      Talley's Lawsuit

On June 19, 2019, Jordan sent an email to Defendant's counsel stating, "my client, Ms. Talley, submitted a FOIA request for Powers' email, which was denied on February 4, 2019."  Doc. #75-4.  "The DOL has given no reason to believe that the DOL will release Powers' email without being ordered to do so by a court.  As a result, on Monday Ms. Talley will file suit in the WDMO to obtain Powers' email if the DOL continues to refuse to release it voluntarily."  *Id.*  Jordan further stated, "Ms. Talley will be requesting an award of costs and fees….  Ms. Talley will be represented by me, as well as by local counsel…."  *Id.*

On June 26, 2019, Talley filed this lawsuit.  Doc. #1.  Talley asks the Court to order Defendant to release "all responsive records containing Powers' emails" and "all other records responsive" to her FOIA request.  *Id.*  Both Jordan's FOIA Request F2018-858557 and Talley's FOIA request sought emails sent by DynCorp's employees on July 30 and July 31, 2013, and certain emails sent to the BRB after January 2, 2018.  Doc. #1, ¶¶ 2-3; No. 18-6129, Doc. #1, ¶¶ 4, 15.  Both Complaints contained the same

---

[11] In this lawsuit, Jordan argues Talley's joinder in his lawsuit was "mandatory," and the undersigned knew joinder was mandatory.  Doc. #43-1, at 23.

> Judge Smith merely refused to comply with FRCP and join Talley. Without any stated (or even any possible) justification, Judge Smith merely contended that *mandatory* joinder under clear and controlling federal law was 'moot.'  Judge Smith Lied.  He knew mandatory joinder was not moot.  The evidence of his Lie included his and the DOL's complete silence about any potential justification for disregarding or violating FRCP 19.

Doc. #43-1, at 24 (citations omitted) (emphasis in original); *see also* Doc. #44, at 2-4 (arguing FRCP "19 and the relevant facts made Talley's joinder mandatory" and "Judge Smith merely refused to comply with FRCP 19 and join Talley."); Doc. #86, at 10.

allegations, sought similar relief, and attached the same exhibits.  *Compare* Doc. #1, ¶¶ 2-6, 8-10, 12, 17, 20-22, 24, and p.8; Doc. #1-1; Doc. #1-2; *with* No. 18-6129, Doc. #1, ¶¶ 4-7, 10-11, 15-18, 23, 25, 31, 33, 36, 39, and p.15; Doc. #1-2, Doc. #1-5. Consequently, in July 2019, the Court stayed this matter pending the Eighth Circuit's disposition of Jordan's appeal.  Doc. #7.

Jordan was not an attorney of record when Talley filed her lawsuit.  However, while this matter was stayed, Jordan entered his appearance on Talley's behalf in October 2019.  Doc. #8.  Since that time, Jordan has been Talley's only counsel of record.  Docs. #9, 11.  Ever since, Jordan has filed numerous motions.  In those filings, Jordan presented arguments about the contentions presented and determinations made with regard to the Powers email in Maria Jordan's DBA Claim, Jack Jordan's Sarbanes-Oxley claims, and his D.C. lawsuit.  *See*, *e.g.*, Doc. #15, at 13, 16-17; Doc. #26, at 6-12, 14, 16-18; Doc. #28, at 11-12; Doc. #32, at 6-10, 14; Doc. #43-1, at 11-14; Doc. #43-3, at 6-11; Doc. #50, at 3-6; Doc. #53, at 7-8, 10; Doc. #58, at 10; Doc. #61, at 11-14; Doc. #69, at 2-5; Doc. #69-1, at 7-9; Doc. #69-2; Doc. #69-3; Doc. #69-4; Doc. #81, at 11-13, 15-16, 19, 22, 30; Doc. #81-2; Doc. #81-3, at 1-4; Doc. #86, at 7-14, 22, 31-34.[12]

After the Eighth Circuit issued its mandate in Jordan's appeal in early May 2020, the Court lifted the stay and directed the parties to file dispositive motions.  Doc. #62. Now pending are Talley's Motions for Judgment on the Pleadings (Docs. #67, 69),

---

[12] In addition, Jordan continuously stated the undersigned committed and was continuing to commit crimes, including conspiring with Defendant and its counsel; violating federal law and the Constitution; setting forth "false and illegal contentions"; engaging in "criminal misconduct"; asserting "Lies"; issuing "blatantly unconstitutional and illegal" orders; and was "willfully blind."  *See*, *e.g.*, Doc. #17, at 6-20; Doc. #20, at 11; Doc. #26, at 10; Doc. #28, at 5-8, 11-12, 15, 18; Doc. #29, at 10; Doc. #32, at 4, 6, 10-12, 14, 19-20; Doc. #39, at 13-14, 16-17;  Doc. #41, at 9, 16; Doc. #43, at 3, 6-8, 16, 22,  27-28; Doc. #43-2.  Regarding these filings, on March 4, 2020, the Honorable Beth Phillips concluded Jordan violated Rule 11 of the Federal Rules of Civil Procedure, sanctioned Jordan in the amount of $1,000, and referred the matter to the Kansas Bar Association.  Doc. #47.  Although he was sanctioned, Jordan has continued to assert the undersigned and now Judge Phillips have engaged in criminal conduct. *See* Docs. #48-49, 52-54, 57-58, 61, 64-65, 76, 86, 94, 99-100.  Recently, the Court prohibited Jordan from filing anything further in this matter due to his disregard of the Court's Orders and again referred him to the Kansas Bar Association.  Docs. #92, 97.

Defendant's Motion to Strike Jury Demand (Doc. #72), Defendant's Motion for Summary Judgment (Doc. #75), and Talley's Motion for Leave to File Notice of Appeal (Doc. #94).

## II. TALLEY'S MOTIONS FOR JUDGMENT ON THE PLEADINGS

### A. <u>Legal Standard</u>

"Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002) (citations omitted); Fed. R. Civ. P. 12(c). In considering a motion for judgment on the pleadings, the court "accept[s] as true all facts pleaded by the non-moving party and grant[s] all reasonable inferences from the pleadings in favor of the non-moving party." *Id.* (citations omitted). The Court reviews a motion for judgment on the pleadings under the same standard governing motions to dismiss for failure to state a claim. *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The claim for relief must be "'plausible on its face,'" meaning it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007)). Mere "'labels and conclusions,'" "'formulaic recitation[s] of the elements of a cause of action,'" and "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

### B. <u>Discussion</u>

#### *(1) First Motion for Judgment on the Pleadings*

Talley's first motion for judgment on the pleadings largely focuses on Defendant's answer, or rather, Defendant's failure to file an answer. Talley argues Defendant "entirely failed to address" and "admitted" her allegations because Defendant "failed to show…good cause for failing to serve an Answer within 30 days that were not (even partially) subject to any stay, *i.e.*, June 27 through July 24, 2019 (28 days) and May 6,

2020 to present (14 days so far)."  Doc. #67-1, at 13-14.[13]  Defendant filed its answer on May 28, 2020, admitting some allegations but denying other allegations.  Doc. #68.  In addition, Defendant asserted several affirmative defenses.  *Id.* at 1-2.

Pursuant to FOIA, Defendant has thirty days to file its answer or otherwise respond.  5 U.S.C. § 552(a)(4)(C).  This matter, however, was stayed before Defendant's deadline to file its answer.  Then, once the stay was lifted, Defendant filed its answer in less than thirty days.  Talley does not cite any authority supporting her argument that Defendant admitted her allegations even though it filed its answer within thirty days of the stay being lifted.  Accordingly, Talley's first judgment for motion on the pleadings is denied.

### (2)    Second Motion for Judgment on the Pleadings

After Defendant filed its answer, Talley filed a second motion for judgment on the pleadings.  Doc. #69.  Therein, Talley concedes Defendant denied many allegations but maintains Defendant's denials to Paragraphs 5, 6, and 24 are "false" or "asserted falsehoods."  Doc. #69-1, at 11-13.

As explained *supra*, judgment on the pleadings is only appropriate when no material issues of fact remain to be resolved.  *Faibisch*, 304 F.3d at 803; *see also Beal v. Mo. Pac. R.R. Corp.*, 312 U.S. 45, 51 (1941) (holding "denials and allegations of the answer which are well pleaded must be taken as true.").  Also, because Defendant is the nonmovant, the Court is required to accept Defendant's assertions as true and draw reasonable inferences in its favor.  *Id.*  This affords the nonmovant "the benefit of all possible favorable assumptions."  5C Arthur R. Miller, Mary Kay Kane & A. Benjamin Spencer, Federal Practice and Procedure § 1368 (3d ed. 2020).

Talley's dispute with the veracity of Defendant's denials and assertions demonstrates material issues of fact are unresolved.  In addition, when accepting Defendant's assertions as true, the Court is unable to conclude whether Defendant properly or improperly withheld documents requested by Talley.  Thus, the Court denies Talley's second motion for judgment on the pleadings.

---

[13] Talley's motion was filed on May 19, 2020.  Doc. #67.

### III.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### A.    Standard

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986).  "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted).  Inadmissible evidence may not be used to support or defeat a summary judgment motion.  *Brooks v. Tri-Sys., Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (citation omitted).  The Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences reasonably drawn from the evidence.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984).

#### B.    Discussion

##### (1)    FOIA

FOIA "ensure[s] that government is conducted in the open" and "provide[s] wide-ranging public access to government documents."  *Miller v. U.S. Dep't of Agric.*, 13 F.3d 260, 262 (8th Cir. 1993); *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1389 (8th Cir. 1985).  "FOIA represents a carefully balanced scheme of public rights and agency obligations designed to foster greater access to agency records than existed prior to its enactment."  *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980).  FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material."  *Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011).  The nine exemptions "are 'explicitly made exclusive,' and must be 'narrowly construed.'"  *Id.* (quoting *FBI v. Abramson,* 456 U.S. 615, 630 (1982)).

This Court reviews an agency's FOIA decision *de novo*. 5 U.S.C. § 552(a)(4)(B) (2016). "[S]ummary judgment is available to a defendant agency where 'the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *Mo. Coal. for Env't Found. v. U.S. Army Corps of Eng'rs*, 542 F. 3d 1204, 1209 (8th Cir. 2008) (quoting *Miller*, 779 F.2d at 1382). To discharge this burden, the agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [the FOIA's] inspection requirements." *Miller*, 779 F.2d at 1382-83 (citation omitted); 5 U.S.C. § 552(a)(4)(B).

If an agency withholds a document, it carries its burden of proof by providing declarations or affidavits explaining why documents are subject to an exemption. *Mo. Coal. For Env't Found.*, 542 F.3d at 1210 (citing *Miller*, 779 F.2d at 1387). Agency affidavits and declarations receive "substantial weight," but "they must include more than 'barren assertions' that a document is exempt." *Madel v. U.S. Dep't of Justice*, 784 F.3d 448, 452 (8th Cir. 2015). "If the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without in camera review of the documents." *Quiñon v. F.B.I.*, 86 F.3d 1222, 1227 (D.C. Cir. 1996) (citations omitted).

### (2)    Res Judicata

Defendant argues it is entitled to summary judgment because Talley's FOIA claims are barred by res judicata. Doc. #75, at 16-18. "[R]es judicata, or claim preclusion, applies when (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018) (citation and quotation marks omitted).[14] "By 'preclud[ing] parties from contesting matters that they have had a

---

[14] When the prior suit was litigated in federal court and arose under federal law, the effect of res judicata is decided by federal law. *See Poe v. John Deere Co.*, 1103, 1105

full and fair opportunity to litigate,' [claim preclusion and issue preclusion] protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *Montana v. United States,* 440 U.S. 147, 153-54 (1979)).  Generally, "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."  *Id.* at 893 (citations omitted).  But there are exceptions to this general rule, including, but not limited to, when "a person who did not participate in a litigation later brings suit as the designated representative of a person who was a party to the prior adjudication," or "when a nonparty later brings suit as an agent for a party who is bound by a judgment."  *Id.* at 895 (citation omitted).

Talley does not dispute or present evidence refuting Jordan's D.C. lawsuit was based on proper jurisdiction or resulted in a final judgment on the merits. *See* Doc. #81, at 34-36.  In addition, Talley does argue her lawsuit brings different claims or asserts causes of action that are different than those asserted in Jordan's D.C. lawsuit.  *Id.* Thus, for res judicata bar this lawsuit, Jordan must be relitigating by proxy, or Talley and Jordan are in privity.  *See Taylor*, 553 U.S. at 894; *Elbert*, 903 F.3d at 782.

### (a) Relitigation by Proxy

According to the Supreme Court, a party dissatisfied with the outcome of a lawsuit is barred from bringing another lawsuit in the name of another to seek redetermination of an issue already resolved.  *Montana*, 440 U.S. at 154.  "[O]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own…is as much bound…as he would be if he had been a party to the record."  *Id.* (quoting *Souffront v. Compagnie des Sucreries*, 217 U.S. 475, 486-87 (1910)).  As demonstrated by the filings in this matter, Jordan is dissatisfied with the outcome of his administrative proceedings, his D.C. lawsuit, and the lawsuit filed in this Court.  *See*

---

(8th Cir. 1982); *see also Taylor*, 553 U.S. at 891.

*supra*, section I(B)-(D).  Jordan, although a licensed attorney, represented himself in those matters.

Now, Talley, represented by Jordan, brings the matter currently before this Court, seeking the same relief Jordan sought in his administrative and judicial proceedings. Talley asks this Court to decide something that ALJs and the D.C. District Court have already determined.  Nothing in the record demonstrates any controlling facts or legal principles have changed significantly since those determinations were made.  *See Montana*, 440 U.S. at 155.  Instead, the record demonstrates Talley merely serves as Jordan's proxy in this matter.

First, while his FOIA lawsuit was pending in this Court, Jordan moved to add Talley as a plaintiff.  Jordan argued if the Court denied his motion and did not add Talley as a plaintiff, "the DOL will be required to litigate all the issues that the DOL attempted to avoid with its Motion to Dismiss regarding Powers' emails.  Such a result would be a waste of judicial and agency resources."  No. 18-6129 (Doc. #37, at 8).  Jordan also argued joining Talley to his lawsuit "would ensure that judicial and administrative resources are not wasted by other courts re-addressing the issues that already have been addressed in this case."  *Id.* at 17.  In her declaration attached to Jordan's motion, Talley declared she "retained Jack Jordan to join in the on-going litigation" in Jordan's lawsuit.  No. 18-6129 (Doc. #37-1, at 2).

Jordan also submitted a declaration in support of his motion to add Talley as a plaintiff to his lawsuit.  Therein, Jordan declared that Talley sought the same records that Jordan sought in FOIA Request F2018-858557.  No. 18-6129 (Doc. #37-2, at 1). Jordan informed the Court that he represented Talley and five other individuals – i.e., Campo, Magdangal, Purchase, Donaldson, and "a person who resides in New York" – who submitted FOIA requests in January 2019 for the same records Jordan requested in his FOIA request.  *Id.* at 1-2; *see also* Doc. #37, at 2.  This declaration reiterates Jordan's statement in one of his Sarbanes-Oxley matters, where he represented, "six additional individuals (residing in areas under the Second, Sixth, Eighth, Ninth, and Tenth Circuits) each filed his or her own FOIA request for Powers' emails.  Each request that is denied will be pursued in a separate suit."  Doc. #75, at 7-8; Doc. #75-3, at 27 n.5; Doc. #81, at 11.  More recently, in this lawsuit, Jordan stated: "I have

represented myself or other clients seeking Powers' email…in additional legal proceedings in U.S. District Courts for the District of Washington, D.C., Western District of Missouri and the Eastern District of New York and the Courts of Appeals for the D.C. Circuit and the Eighth Circuit."  Doc. #81-3, ¶1.

Before Talley filed this lawsuit, Jordan emailed Defendant's counsel demanding the production of the Powers email.  Doc. #75-4.  Jordan informed Defendant's counsel that Talley would file suit if the email was not produced.  *Id.*  Jordan also stated he would be representing Talley in the lawsuit. *Id.*  Talley's Complaint also revealing.  First, her Complaint (and FOIA Request) specifically reference Maria Jordan's DBA case number.  Doc. #1, ¶ 2.  Her allegations recite much of the history about Jordan's administrative and judicial proceedings.  *Id.* ¶¶ 4-10, 16-24.  Talley seeks "all responsive records containing Powers' email."  *Id.* at 8.  Attached to her Complaint are the redacted Powers email and a filing from Maria Jordan's DBA proceeding.  Docs. #1-1, 1-2.

Significantly, Talley's lawsuit has focused, almost exclusively, on the arguments presented and determinations made in Jordan's administrative and judicial proceedings.  *See*, *e.g.*, Doc. #15, at 13, 16-17; Doc. #26, at 6-12, 14, 16-18; Doc. #28, at 11-12; Doc. #32, at 6-10, 14; Doc. #43-1, at 11-14; Doc. #43-3, at 6-11; Doc. #50, at 3-6; Doc. #53, at 7-8, 10; Doc. #58, at 10; Doc. #61, at 11-14; Doc. #69, at 2-5; Doc. #69-1, at 7-9; Doc. #69-2; Doc. #69-3; Doc. #69-4; Doc. #81, at 11-13, 15-16, 19, 22, 30; Doc. #81-2; Doc. #81-3, at 1-4; Doc. #86, at 7-14, 22, 31-34.  These filings are rife with arguments about the D.C. District Court and ALJs making erroneous decisions and determinations, according to Talley and Jordan, and the representations made by Defendant and its attorneys.

Also, Talley raises arguments about whether Jordan had a fair opportunity to be heard in his D.C. lawsuit.  By way of example, Talley, in a filing signed by Jordan, argues she "must be permitted to demonstrate…Jordan did not have a fair opportunity procedurally, substantively and evidentially to pursue his claim in the D.C. courts."  Doc. #15, at 13 (citation and internal quotations omitted).  This argument disregards the fact that the D.C. Court issued its judgment, which was affirmed by the D.C. Court of Appeals.  To the extent he did not have a "fair opportunity procedurally, substantively and evidentially," Jordan should have raised that issue during that litigation.

Based on the record before the Court, which includes but is not limited to Talley's and Jordan's foregoing declarations and representations, Jordan, as Talley's attorney, is assisting in, if not controlling, the prosecution of this matter in Talley's name. This lawsuit seeks to relitigate an issue already resolved in Jordan's D.C. lawsuit, which was appealed and affirmed twice, and Jordan's administrative proceedings. Because Jordan, at a minimum, is "assist[ing] in the prosecution" of this lawsuit "in aid of some interest of his own," he is barred from bringing this lawsuit in Talley's name. The Court finds Talley is serving as a proxy in this matter, and therefore, the Court grants Defendant's motion for summary judgment is granted.

### (b) Privity

In addition to Talley serving as Jordan's proxy, Talley and Jordan are in privity, which bars Talley from bringing this matter. The Eighth Circuit "long ago recognized that claim preclusion is not limited to cases involving the same parties or parties who are in traditional 'privity' with [a party] in a first action." *Elbert*, 903 F.3d at 783. Although the parties do not cite an Eighth Circuit case on point, several other courts have determined an attorney and client are privies. *See*, *e.g.*, *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000) (citation omitted); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986) (citation omitted); *Martell v. Cohen Clair Lans Greifer Thorpe & Rottenstreich, LLP*, No. 18 CIV. 9692 (ER), 2019 WL 4572196, at *3 (S.D.N.Y. Sept. 20, 2019); *Hansen v. U.S. Bank, Nat'l Ass'n*, No. 4:15-CV-00085-BLW, 2015 WL 5190749, at *7 (D. Idaho Sept. 4, 2015); *Iseley v. Talaber*, No. CIVA 1:05-CV-444, 2008 WL 906508, at *3 n.1 (M.D. Pa. Mar. 31, 2008) (citation omitted).

In addition, the Missouri Court of Appeals has determined an attorney and client are privies. *Kinsky v. 154 Land Co.*, 371 S.W.3d 108, 113 (Mo. Ct. App. 2012). The Missouri Court of Appeals noted Missouri did not have a "long-established test for determining whether privity exists" between an attorney and a client but determined "control is the qualifying element" when determining whether parties are privies. *Id.* at 113, 115. Finding "control is the 'inescapable consequence' of legal representation," the Missouri Court of Appeals determined an attorney was in privity with the client when counsel made most procedural decisions and determined what evidence and arguments

to present.  *Id.* at 115; *see also Clements v. Pittman*, 765 S.W.2d 589, 591 (Mo. banc 1989) (finding "[w]hether parties are in privity depends mostly on their relationship to the subject matter of the litigation.").  As discussed above, the record establishes the parties' relationship to one another, the relationship to the subject matter of the litigation, and the control exercised by Jordan in this matter.  Thus, the Court finds Jordan and Talley are privies.  For this additional reason, the Court grants Defendant's motion for summary judgment.

### (c)    Abusive Lawsuit with More Than "a Mere Whiff of Tactical Maneuvering"

When considering the record before it, the Court is mindful of the Supreme Court's guidance to courts when faced with determining whether "a nonparty to a prior adjudication has become a litigating agent for a party to the earlier case."  *Taylor*, 553 U.S. at 906.

> [C]ourts should be cautious about finding preclusion on this basis.  A mere whiff of "tactical maneuvering" will not suffice; instead, principles of agency law are suggestive.  They indicate that preclusion is appropriate only if the putative agent's conduct of the suit is subject to the control of the party who is bound by the prior adjudication.

*Id.* (citation omitted).  Similar to the matter before this Court, *Taylor* was a subsequent FOIA lawsuit for documents previously requested and litigated in prior lawsuit. However, because the record before the Supreme Court was unclear, it could not determine whether the party pursuing the subsequent FOIA lawsuit was "acting as" the agent of the person who was a party to a prior FOIA lawsuit.  *Id.* at 905.  Thus, the matter was remanded.

Unlike *Taylor*, the record is clear in this matter.  There is not simply a "whiff" of "tactical maneuvering."  As discussed above, Talley, represented by Jordan, filed this matter to relitigate issues decided in Jordan's prior lawsuit.  Jordan, as Talley's attorney and as demonstrated by the filings in this matter and Jordan's previous lawsuits, controls the lawsuit.  Talley is simply Jordan's proxy.

Additionally, the Court recognizes, as the Supreme Court did, FOIA does not preclude other individuals from seeking the same documents someone else sought. The Supreme Court acknowledged it was "theoretically possible that several persons

21

could coordinate to mount a series of repetitive [FOIA] lawsuits." *Taylor*, 553 U.S. at 903. But the Supreme Court was "not convinced that this risk justifies departure from the usual rules governing nonparty preclusion" because (1) "*stare decisis* will allow courts swiftly to dispose of repetitive suits brought in the same circuit," and (2) "even when *stare decisis* is not dispositive, 'the human tendency not to waste money will deter the bringing of suits based on claims or issues that have already been adversely determined against others.'" *Id.* at 903-04. The Supreme Court noted its "intuition seem[ed] to be borne out by experience" since the "FAA has not called our attention to any instances of abusive FOIA suits in the Circuits…." *Id.* at 904.

The Court is aware of at least four lawsuits Jordan has filed on behalf of himself or others that seek the same relief Jordan sought in his D.C. lawsuit: (1) Jordan's lawsuit in this Court; (2) this lawsuit; (3) a lawsuit filed in this Court by Robert Campo, who is represented by Jordan (No. 19-905); and (4) a lawsuit filed by another individual represented by Jack Jordan, which is pending in the United States District Court for the Eastern District of New York.[15] In addition, according to Jordan's filings and declarations, there are at least three other individuals represented by Jordan – i.e., Magdangal, Purchase, and Donaldson – who intend to file lawsuits to obtain the Powers email. No. 18-6129 (Doc. #37-2, at 1-2).

Contrary to the Supreme Court's belief, this Court cannot dispose of this matter based on *stare decisis*. And "the human tendency not to waste money" mentioned by the Supreme Court did not deter Jordan from filing his lawsuit in this Court, representing Talley in her lawsuit, or representing others who bring suits "based on claims or issues that have already been adversely determined against others.'" *Id.* at 903-04. This is an abusive FOIA lawsuit.

### (3)    The Powers Email

Even if Talley's claims were not barred by res judicata, Defendant would still be entitled to summary judgment because Defendant properly responded to Talley's FOIA

---

[15] *Immerso v. U.S. Dep't of Labor*, No. 19-Civ.3777 (E.D.N.Y).

request, produced responsive documents, and appropriately redacted portions of documents exempt from disclosure under FOIA.

Talley's FOIA request sought the Huber and Powers emails and records establishing the date the Huber and Powers emails were transmitted to and received by the BRB. Doc. #75, at 1-2; Doc. #75-1, at 4, 8-9; Doc. #81, at 6. In response, Defendant released four pages with redactions applied to the "Powers email" portion of the record pursuant to Exemption 4, 5 U.S.C. § 552(b)(4). Doc. #75, at 2; Doc. #75-1, at 2-3, 10-11, 30-33; Doc. #81, at 6. Defendant conducted a search for records showing when the Huber and Powers emails were transmitted to and received by the BR, but the search revealed no responsive records. Doc. #75, at 3; Doc. #75-1, at 4; Doc. #81, at 6. When conducting a further review of the request, Defendant located transmission records for the case file – to wit, a docket sheet and a UPS shipping label – which were provided to Jordan on Talley's behalf. Doc. #75, at 3; Doc. #75-1, at 4, 15-21; Doc. #81, at 6. Jordan acknowledged receipt of the additional records. Doc. #75, at 3; Doc. #75-1, at 4, 15; Doc. #81, at 6.

The parties disagree as to whether Defendant properly withheld the Powers email pursuant to Exemption 4. Exemption 4 prevents disclosure of "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). "Information other than trade secrets falls within the second prong of the exemption if it is shown to be (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (citation omitted); *Madel*, 784 F.3d at 452 (citations and internal quotations marks omitted).

#### (a)     Commercial or Financial Information

"Information is 'commercial' under this exemption if, 'in and of itself,' it serves a 'commercial function' or is of a 'commercial nature.'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002) (citations omitted). According to Defendant's declaration, the Powers email is an internal DynCorp communication about a DynCorp business contract and reveals commercial operations. Doc. #75-1, at 6. Talley does

not dispute the information is commercial or financial.[16]  Moreover, upon conducting an in camera review of the email, the Court finds the email contains information about business operations.[17]  Thus, the first prong of Exemption 4 is met.  *See also Jordan*, 273 F. Supp. 3d at 230-31.

### (b)    Obtained from a Person

Under FOIA, a "person" is defined as "an individual, partnership, corporation, association, or public or private organization other than an agency."  5 U.S.C. § 551(2).  According to Defendant's declaration, the Powers email was obtained from DynCorp, which is considered a "person" under FOIA.  Doc. #75-1, at 6.  Talley does not dispute the Powers email was obtained from a person.  Thus, the second prong is met.  *See also Jordan*, 273 F. Supp. 3d at 231.

### (c)    Privileged[18]

Privileged information includes "information that falls within recognized constitutional, statutory, or common law privileges."  *Gen. Elec. Co. v. Dep't of Air Force*, 648 F. Supp. 2d 95, 101 n.4 (D.D.C. 2009) (citing *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 267-68 n.50 (D.C. Cir. 1982)); *see also Jordan*, 273 F. Supp. 3d at 231 (citations omitted).  The attorney-client privilege has been recognized under Exemption 4.  *See Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 945 (10th Cir. 1990) (citations omitted).  The attorney-client privilege "applies broadly to communications made by corporate employees to counsel to secure legal advice from counsel."  *PaineWebber Grp., Inc. v. Zinsmeyer Trs. P'ship*,

---

[16] Talley argues Defendant failed to cite evidence showing the Powers email included trade secrets or commercial or financial information.  Doc. #81, at 16.  Defendant submitted a declaration in support of its summary judgment motion, which is entitled to "substantial weight," that provided more than "barren assertions" that the Powers email was exempt.  *Madel*, 784 F.3d at 452.  The information contained in the declaration is not contradicted in the record, and although Talley contends Defendant acted in bad faith, there is no evidence in the record of agency bad faith.

[17] Although the Court did not request an in camera review of the Powers email, Defendant provided the unredacted Powers email to the Court on June 8, 2020.

[18] Defendant does not argue the information in the Powers email is confidential, so the Court limits its discussion to whether the information is privileged.

187 F.3d 988, 991 (8th Cir. 1999) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

Defendant withheld the Powers email because it determined the information was privileged. Doc. #75-1, at 6. Defendant's declaration states the DynCorp emails were marked "Subject to Attorney Client Privilege" and were sent by a DynCorp email to DynCorp's in-house attorney "to apprise him of developments potentially impacting a DynCorp contract and to explicitly request the attorney's input and review of the information transmitted." Doc. #75-1, at 6. In response, Talley argues: "No evidence in the record in any proceeding shows that Judge Contreras determined that the DOL presented evidence showing *any* fact necessary to establish that Powers' email was protected by the attorney-client privilege consistent with Supreme Court precedent…." Doc. #81, at 9 (emphasis in original). She also argues Judge Contreras "knowingly violated Jordan's rights under federal law…and asserted contentions that he *knew* were false (each a **"Lie"**) to help DOL and DOJ employees conceal relevant evidence and material facts." *Id.* (emphasis in original).

The Powers email was sent by Darin Powers, DynCorp's Vice President, to Brian Cox, Robert Huber, and Christopher Bellomy, and William Imbrie and Martha Huelsbeck are copied on the email. Doc. #75-1, at 30-33. The subject of the email is "WPS – next steps & actions." *Id.* Bellomy was DynCorp's in-house counsel. Doc. #75, at 15; *Jordan*, 273 F. Supp. 3d at 232. As set forth in Defendant's declaration and confirmed by the Court's in camera review, the email is marked "Subject to Attorney Client Privilege" and seeks counsel's advice and input on the information contained in the email. Accordingly, the Court finds the Powers email is protected by the attorney-client privilege, and the Defendant properly withheld the email pursuant to Exemption 4. *See also Jordan*, 273 F. Supp. 3d at 231-32.

### (d) Segregability

Talley argues Defendant failed to provide the non-exempt segregable portions of the Powers email. "In a FOIA action, the focus is on the information sought, not the documents themselves." *Mo. Coal. for Env't Found.*, 542 F.3d at 1211-12. This is because "[a]ny reasonably segregable portion of a record shall be provided to any

person requesting such record after deletion of the portions which are exempt under this subsection." *Id.* at 1212 (quoting 5 U.S.C. § 552(b)). An agency may not withhold an entire document if some of the information contained therein is subject to an exemption. *Id.* (citation omitted). "Rather, non-exempt portions of documents must be disclosed unless they are 'inextricably intertwined' with exempt portions." *Id.* (citation omitted).

Defendant declares all reasonably segregable portions of the record were released to Talley after Exemption 4 was applied to the record. Doc. #75-1, at 6. The Powers email is part of a chain of emails dated July 30 and 31, 2013. *Id.* at 30-33. Other than the Powers email, which begins the chain of emails, Defendant produced the other emails in the chain to Talley. *Id.* Regarding the Powers email specifically, the Court finds the Exemption 4 attorney-client privilege applies to the entire Powers email. That is, Powers sought counsel's advice about the information in his email. Therefore, the Court finds Defendant produced all reasonably segregable portions of the requested record.[19]

For all the foregoing reasons, the Court, when construing the underlying facts in the light most favorable to Talley, finds Defendant has established it fully discharged its FOIA obligations. The Court grants Defendant's motion for summary judgment.[20]

## IV.    OTHER PENDING MOTIONS

Because the Court grants Defendant's Motion for Summary Judgment, Defendant's Motion to Strike Talley's Jury Demand and Talley's Motion for Leave to File a Notice of Appeal are rendered moot.

## V.    TALLEY'S NOTICE OF APPEAL

On June 26, 2020, the Court warned Talley and Jordan that additional frivolous motions would be met with additional sanctions, another referral to the Kansas Bar Association, and referrals to other jurisdictions wherein counsel is licensed to practice

---

[19] *See also Jordan*, 273 F. Supp. 3d at 235-37; *Jordan v. U.S. Dep't of Justice*, No. Civil Action No. 17-2702(RC), 2019 WL 2028399, at *4-5 (D.D.C. May 8, 2019),
[20] To the extent the Court did not address arguments raised in Talley's opposition to Defendant's motion for summary judgment, the Court overrules those arguments.

law.  Doc. #83.  On July 1, 2020, Talley filed two motions, which were "frivolous, unprofessional, and scurrilous, if not defamatory, in tone and content."  Docs. #90-93.  The Court struck Talley's motions and prohibited Talley and Jordan from filing anything further in this matter without the Court's approval.

On July 2, 2020, Talley's counsel sent an email to Chambers requesting, among other things, leave to file a Notice of Appeal and attaching said motion.  The Court filed Talley's motion and reminded Talley and her counsel that they were prohibited from filing anything further in this matter without the Court's approval.

Nevertheless, on July 9, 2020, Talley, without the Court's approval, filed a Notice of Appeal.  Doc. #100.  Because the Notice of Appeal was filed in violation of the Court's Orders, the Court strikes the Notice of Appeal.  The Clerk's Office is directed to retain a copy of the Notice of Appeal under seal.

## VI.    CONCLUSION

For the foregoing reasons, Talley's Motions for Judgment on the Pleadings are denied, Defendant's Motion for Summary Judgment is granted, Defendant's Motion to Strike and Talley's Motion for Leave to File a Notice of Appeal are denied as moot, and Talley's Notice of Appeal is struck.  With the exception of filing a Notice of Appeal, Talley and her counsel are prohibited from filing anything further in this matter without prior approval from the Court.  In addition, Talley and her counsel are prohibited from sending emails to the undersigned's staff.

IT IS SO ORDERED.

                                                    /s/ Ortrie D. Smith
DATE:  July 13, 2020                         ORTRIE D. SMITH, SENIOR JUDGE
                                                    UNITED STATES DISTRICT COURT